IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

|  |  |  |
|---|---|---|
| | * | |
| JOSEPH F. GALLAGHER and | * | |
| SANDRA LEE GALLAGHER | | |
| | * | |
| Plaintiffs, | | Case No.: 8:19-cv-2692-PWG |
| v. | * | |
| | | |
| MARRIOTT INTERNATIONAL, INC., | * | |
| MARRIOTT NETHERLANDS GROUP | | |
| COMPANIES N.V., and | * | |
| ADMAR AMSTERDAM HOTEL B.V. | | |
| | * | |
| Defendants. | | |
| | * | |
| | | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

On July 15, 2017, Plaintiff Joseph Gallagher allegedly slipped on a blanket left on the floor of his hotel room at the Renaissance Amsterdam Hotel-Kattengatl ("the Hotel"). Second Amended Cmpl. 6, ¶ 20 (ECF No. 24). Mr. Gallagher suffered several injuries from the fall including a torn meniscus in his right knee. *Id.* ¶ 21. The Second Amended Complaint further alleges that these injuries both caused Mr. Gallagher to incur substantial medical expenses and an injury to his wife, Plaintiff Sandra Lee Gallagher, who alleges loss of consortium. The Gallaghers bring claims for (1) Negligence against all Defendants: Marriott International, Inc. ("Marriott"), Marriott Netherland Group Companies N.V., and Adamar Amsterdam Hotel B.V.;[1] (2) Breach of Contract

---

[1]    Only Marriott International, Inc. has entered an appearance in the case. Plaintiffs have attempted to effectuate service of process on Marriott Netherlands and Admar through Marriott International's counsel in Maryland, but counsel for Marriott International states he does not represent the Co-Defendants. Def. Reply 2, n.2 (ECF No. 30).

and Warranty (Actual and Implied) against Defendant Marriott only; (3) Negligent Misrepresentation against Defendant Marriott only; and (4) Loss of Consortium, (all defendants). *Id.* 7-11.

Defendant Marriot filed a motion to dismiss as to Marriott only, citing the doctrine of *forum non conveniens*, alleging that the Gallaghers' claims failed because they should have been filed in The Netherlands, or, alternatively, that the claims failed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  Def.'s Mot. Mem. 1 (ECF No. 28-1).

To prevail on a theory of *forum non conveniens*, Marriott must carry a heavy burden and for the following reasons, I find they have not met their burden.  I also find Marriott's alternative arguments for dismissal unconvincing at this juncture.  Therefore, Marriott's motion will be denied and the case allowed to proceed.

## Standard of Review

1) *Forum non conveniens*

The doctrine of *forum non conveniens* allows a court to "resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 507 (1947), *superseded on other grounds by* 28 U.S.C. § 1404. The Supreme Court has explained that "the central focus of the *forum non conveniens* inquiry is convenience." *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 248, (1981).  The plaintiff's identity also factors heavily into the analysis.  As an initial matter, "a citizen plaintiff's choice of forum is entitled to even greater deference when the plaintiff chooses her 'home forum.'" *DiFederico v. Marriott Int'l*, 714 F.3d 796, 802–03 (4th Cir. 2013).  That choice of forum is *presumptively* convenient, and may only be overridden upon the defendant's showing of "oppressiveness and vexation to a defendant" disproportionate to the plaintiff's convenience.  *Id.* at 803.  Finally, if a

plaintiff shows that their home forum is convenient, this will normally override inconvenience to the defendant. *Id.* at 803.  As applicable here, the home forum for the Plaintiffs is any federal district court in the United States. *Id.* at 803 n.4.[2]

Under the Fourth Circuit's *forum non conveniens* framework, the moving party must show that an "alternative forum is: 1) available; 2) adequate; and 3) more convenient in light of the relevant public and private interests." *Jiali Tang v. Synutra Int'l, Inc.* 656 F.3d 242, 248 (4th Cir. 2011) (*citing Piper Aircraft*, 454 U.S. at 257).

To assess convenience, courts evaluate both private and public factors.  The relevant private interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling witnesses; (3) the cost of obtaining willing witnesses; and (4) other practical problems involving efficiency and expense of trial. *See Gulf Oil,* 330 U.S. at 508–09.  A primary concern when evaluating the private factors is to ensure that the plaintiffs did not select an inconvenient forum for the purpose of harassing the defendants. *See, e.g., Ferruzzi Italia, S.p.A v. Trade & Transp., Inc.,* 683 F. Supp. 131, 135 (D. Md. 1988) (citing *Piper Aircraft,* 454 U.S. at 249 n. 15) ("The rule [of *forum non conveniens*] was particularly designed to prevent harassment of defendants.").  The public interest factors consist of the: (1) administrative difficulties flowing from court congestion; (2) local interest in having localized controversies decided "at home;" (3) interest in having the trial of a diversity case in a forum that is familiar with the law that must govern the action; (4) avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and (5) unfairness of burdening citizens of an unrelated forum with jury duty. *See Gulf Oil,* 330 U.S. at 508–09; *see also Compania Naviera*

---

[2]     The Gallaghers originally filed this suit in the Eastern District of Pennsylvania, where they reside, but the suit was transferred to the District of Maryland.  (ECF No. 5); Pl.'s Second Amended Cmpl. ¶ 1.

*Joanna SA v. Koninklijke Boskalis Westminster NV,* 569 F.3d 189, 200 (4th Cir. 2009) (outlining these factors). As *DiFederico* observes, these factors are guideposts for a District Court: "the ultimate inquiry is where trial will best serve the convenience of the parties and the ends of justice." *DiFederico*, 714 F.3d at 804 (citing *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 527 (1947)).

 *DiFederico* and *Tang* instruct that the defendant seeking dismissal must show that the "public and private interests *strongly favor*" the specific, adequate, and available forum in a foreign jurisdiction. *DiFederico*, 714 F.3d at 802, (*citing Tang* 656 F.3d at 246). To meet its burden, the defendant must show "not only that [the plaintiff's choice of forum] was not the best forum, but that a particular other forum was *more appropriate.*" *Kontoulas v. A.H. Robins Co., Inc.,* 745 F.2d 312, 315 (4th Cir. 1984). This burden implies a preliminary duty "to show that an alternative forum exists," *In re Dalkon Shield Litig.,* 581 F. Supp. 135, 142 (D. Md. 1983), and that it is "available as to *all defendants.*" *Galustian,* 591 F.3d at 731 (citation omitted). Furthermore, the defendant must indicate "what *court* provides the alternative forum," rather than merely "suggest[ing] the *country.*" *Kontoulas,* 745 F.2d at 316.

 2) Motion to Dismiss for Failure to State a Claim

 Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted." *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012). This rule's purpose "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)). To that end, the Court bears in mind the requirements of Fed. R. Civ. P. 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), when

considering a motion to dismiss pursuant to Rule 12(b)(6).  Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79; *see Velencia*, 2012 WL 6562764, at *4 (discussing standard from *Iqbal* and *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

When reviewing a motion to dismiss, "[t]he court may consider documents attached to the complaint, as well as documents attached to the motion to dismiss, if they are integral to the complaint and their authenticity is not disputed." *Sposato v. First Mariner Bank*, No. CCB-12-1569, 2013 WL 1308582, at *2 (D. Md. Mar. 28, 2013); *see also CACI Int'l v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). Moreover, where the allegations in the complaint conflict with an attached written instrument, "the exhibit prevails." *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991); *see also Azimirad v. HSBC Mortg. Corp.*, No. DKC-10-2853, 2011 WL 1375970, at *2–3 (D. Md. Apr. 12, 2011).

## Discussion

I will first consider the applicability of *forum non conveniens* to the Gallaghers' claims. Marriott contends that The Netherlands is an available jurisdiction for both the Plaintiffs and the Defendants. This is because Marriott "has agreed to make itself available in The Netherlands by accepting personal jurisdiction and waiving the service requirements for limited [sic] purpose of

litigation of this matter." Def.'s Mot. Mem. 5-6. Since Co-Defendants Marriott Netherlands Group and Admar Amsterdam Hotel operate exclusively within The Netherlands, nothing suggests that they will be unavailable to respond to a lawsuit in The Netherlands. *Id.* 6.

So too for the Plaintiffs. Marriott submitted an affidavit from Dr. Christoph Jeloschek, a practitioner at Kennedy Van der Laan, a Dutch law firm. Ex. 2 to Def.'s Mot. Mem. (ECF No. 28-4). Dr. Jeloschek's affidavit stated with considerable specificity the forums available to the Gallaghers in The Netherlands. The legal system in The Netherlands bears similarities to ours: it employs a "civil law system based on statutory law," uses three levels of courts (district, appellate, and the Dutch supreme court), and involves pleadings and evidentiary proceedings. *Id.* ¶¶ 8-11. Dr. Jeloschek stated than no regulations or procedures would bar "a non-EU person to bring a claim in the courts of The Netherlands," nor would any statute of limitations bar the claim. *Id.* ¶¶ 28, 29.

The Gallaghers retort with experts in Dutch law of their own, Hans Mathijsen and Marieke Jansen of Willems Advocaten & Fechtsanwälte N.V., attorneys-at-law in litigation and liability matters. They agree with Dr. Jeloschek that a Dutch court is competent to preside over the Gallaghers' claims. Ex. 1 to Pl.'s Resp. ¶ 3 (ECF No. 29-1). However, the Gallaghers' other claims are likely unavailable in a Dutch court because, as Mathijsen and Jansen state, jurisdictional issues would most likely preclude the breach of contract and negligent misrepresentation claims, and Dutch courts are generally not familiar with a claim for loss of consortium. *Id.* ¶ 17.

The Gallaghers' rebuttal affidavit also cites concerns over possible awards should they prevail on a lawsuit in The Netherlands, the non-existence of a jury system, and the likelihood that a single judge will preside over the case. *Id.* ¶ 5-13. Perhaps that is so, but these concerns

are not relevant to the threshold inquiry on the applicability of a *forum non conveniens* defense

because they do not undercut availability.  On balance, it is clear that a Dutch court is available

to the Gallaghers if this suit were to proceed in The Netherlands, but only as to the negligence

claim.[3]

Next, the Court must consider the adequacy of the forum. This requirement is met when

"(1) all parties can come within that forum's jurisdiction, and, (2) the parties will not be deprived

of all remedies or treated unfairly, even though they may not enjoy all the same benefits as they

might receive in an American court." *Fidelity Bank PLC v. N. Fox Shipping N.V.*, 242 Fed.

App'x 84, 90 (4th Cir. 2007) (citations and internal quotation marks omitted).  Plaintiffs appear to

have the means of appearing in court in The Netherlands; they have previously travelled there

and, as the Complaint states, Mr. Gallagher stays at Marriott properties approximately 40 days

out of the year.  Pl.'s Second Amended Cmpl. 5, ¶ 16.  And Marriott has conceded that it would

appear in a Dutch court.  Def.'s Mot. Mem. 5-6.  Regarding the first and fourth claims, the

Plaintiffs' affidavit admits the Negligence claim could proceed in a Dutch Court, but doubts the

loss of consortium claim could proceed because it "is not generally known" to Dutch courts.  Ex.

A to Pl.'s Resp. 6-8 ¶¶ 5-13, 16.  Marriott filed a second affidavit from Dr. Jeloschek that did not

address or rebut the Gallaghers' assertions regarding the loss of consortium claim.  Ex. 1 to

Def.'s Reply (ECF No. 30-1).

On this second prong of the threshold inquiry, I find that The Netherlands would be an

adequate forum in which to bring a claim or claims relating to the slip and fall incident Mr.

---

[3]      Policy considerations drive the *forum non conveniens* analysis.  That three fourths of the
Gallaghers' claims are beyond the reach of  a Dutch court would result in bifurcating this lawsuit
with proceedings on both sides of the Atlantic.  The two separate suits would involve identical
sets of facts, witnesses, and, for the most part, parties.  This sort of inefficient resolution does not
advance the policy underpinnings of *forum non conveniens*.

Gallagher alleges, but not without some hesitation. The Gallaghers likely could not pursue all of their claims, though Mr. Gallagher's primary claim is safely within the competency of the Dutch court system. Ex. 1 to Def.'s Reply ¶ 11. Nothing in the filings suggests that the parties would be unable to come within a Dutch court's jurisdiction, nor do I find there is any evidence that any party would be deprived of *all* remedies or treated unfairly. *Fidelity Bank*, 242 Fed. App'x at 90 (emphasis added). Importantly, the Second Jeloschek affidavit suggests Mr. Gallagher would be adequately compensated for losses he suffered, pain and suffering, and lost profits. Ex. 1 to Def.'s Reply ¶¶ 18, 20. But the possibility of resolving the other three claims if this case proceeded in a Dutch court is doubtful, particularly considering the second and third claims proceed only against an American Corporation. *See* Ex. 1 to Pl.'s Resp. ¶¶ 16-17.

The final consideration is the balance of convenience in light of the relevant private and public interests. Again, the *DiFederico* decision, where the Fourth Circuit found that Marriott—the same defendant as the present case—could not avail itself of the *forum non conveniens* defense, offers a lens through which to view this case. For Marriott to prevail, it has the burden of showing that the private and public factors strongly favor dismissal. *DiFederico* 714 F.3d at 802 (citing *Tang*, 656 F.3d at 246).

The relevant private interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling witnesses; (3) the cost of obtaining willing witnesses; and (4) other practical problems involving efficiency and expense of trial. *See Gulf Oil,* 330 U.S. at 508–09.

First, there is no doubt that there are witnesses who would be relevant to the resolution of the Gallaghers' negligence claims who reside in The Netherlands. They include hotel staff, management, and anyone else associated with the Hotel where the Gallaghers were staying on

July 15, 2017.  Requiring those individuals to take a trans-Atlantic flight to resolve this case could certainly be burdensome.  However, several considerations cut the other way.  For instance, the Gallaghers point to Marriott obtaining—quite quickly—a sworn affidavit from the Amsterdam hotel's Director of Finance about the relationship between Marriott International and the Hotel.  Pl.'s Resp. at 8; Ex. 1 to Def.'s Mot. Mem.  This suggests that Marriott is not without the ability to get cooperation from its affiliates in The Netherlands and their employees to provide evidence in this case, despite the fact that they are Dutch citizens or residents.  But other sources of proof within The Netherlands would not require a trip to Amsterdam.  For example, a diagram or photograph of the room where Mr. Gallagher fell would not be difficult to produce, nor would remote depositions of the individuals involved.[4]  While Marriott raises the possible need for a "view" of the room where the Gallaghers stayed, it is hard to imagine what would be gained by this that could not just as easily be seen in a photograph, since the instrumentality of Mr. Gallagher's fall—a blanket—undoubtedly was picked up years ago.

In addition to any sources of proof within The Netherlands, much of the evidence upon which the Gallaghers will rely is here in the United States.  Any evidence of Marriott's

---

[4]      As the Fourth Circuit noted in *DiFederico*, availability of compulsory process for attendance of unwilling witnesses and the cost of bringing witnesses to court "should be given little weight in the overall balancing scheme when the defendant has not shown that any witness is actually unwilling to testify." 714 F. 3d at 806 (internal citations omitted).  Marriott has not shown that any of the witnesses in The Netherlands would be unwilling to testify, either in the United States, or remotely by video deposition.  And the ease with which it obtained the affidavit from the Amsterdam hotel's Director of Finance belies any credible argument that Marriott would not be able to convince employees of its Amsterdam affiliates to be cooperative in providing testimony, at a minimum through a video deposition, if not in person in this Court.  Accordingly, I give little, if any, weight to the possibility that Dutch witnesses might be unwilling to come to the United States or the cost of bringing them here when I balance the factors.

supervision or direction over the Hotel is likely here in the United States,[5] and the District of Maryland is their corporate backyard. *DiFederico*, 714 F.3d at 807 ("[B]ecause [plaintiffs'] central theory revolves around Marriott's coordination of security from its principal place of business, there is inherent convenience to bringing this case in its legal backyard."). This is especially pertinent to the breach of contract and negligent misrepresentation claims, but also could go to the negligence claim if Marriott ever issued directives to its franchisee hotels about how to make up rooms. On this point, proceeding in The Netherlands would be more inconvenient than proceeding here.

Other essential proof is also within the United States. Should the Gallaghers choose to present testimony from medical professionals who treated Mr. Gallagher or expert witnesses on the injuries that he suffered, they will almost certainly seek these experts within the United States. Critically, Mr. Gallagher's medical records, specifically those from his surgery and subsequent treatment, are located within the United States. Pl's Resp. 8. While transporting those records to a Dutch court is likely only a minor burden, presenting in-court testimony from treating physicians, physical therapists, and others favors keeping this case in the United States. These facts effectively "shift the center of the case towards the United States," as does the Gallaghers' choice to include Marriott, an American corporation, in the lawsuit. *DiFederico*, 714 F.3d at 806.

It is also important to note that all four counts involve allegations that are inextricably tied to the tripping hazard that is at the heart of the negligence claims, and the witnesses to the

---

[5]     Marriott contests that it had direct supervision over the hotel. Ex. 1 to Def.'s Mot. Mem, ¶¶ 8-9. The Gallaghers suggest Marriott may have had indirect ownership and control. Pl's Resp. 19.

contract and misrepresentation claims are in the United States.[6] The interests of judicial efficiency favor keeping all four claims together.

As to other practical problems, the final private factor, the preceding discussion indicates it is far from clear that litigating this case in The Netherlands would be the more efficient method of resolving the Gallaghers' claims. Marriott highlights the potential language barrier for Dutch witnesses in an American court. Def.'s Mot. Mem. 11-12. But American courts regularly use interpreter services, and any language barrier presents equivalent issues in the reverse scenario (proceeding in a Dutch court) as well. Marriott also cites the difficulties of "third-party claims for contribution and/or indemnity against any contractor who may have been responsible for the housekeeping of the Hotel room." *Id.* 13. Perhaps. But none of these claims are pending, nor has Marriott shown that they could not pursue them separately in The Netherlands in the event that there is a judgment against them in this Court. These potential difficulties are not enough for Marriott to tip the balance on the private factor analysis. It is clear that the private interest factors do not tilt *strongly* in favor of the case proceeding in The Netherlands, as they must for Marriott to prevail.

The public interest factors consist of the: (1) administrative difficulties flowing from court congestion; (2) local interest in having localized controversies decided "at home;" (3)

---

[6]      *E.g.* Pl.'s Second Amended Cmpl. ¶ 17 (alleging Marriott supervised the other defendants and engaged in misrepresentations and omissions that led Gallagher to reasonably believe the Dutch hotel would have same safety standards as American hotels); ¶ 25 (alleging a violation of the contract and warranties to operate a hotel with a room that was not free of tripping hazards); ¶ 27 (alleging Marriott breached its contractual obligation and warranty when it provided Gallagher with a room that did not meet US safety standards but instead contained tripping hazard); ¶ 30 (alleging Marriott represented within the US that the quality and safety standards for any hotel rooms that Marriott offered regardless of location had no tripping standards); and ¶ 31 (alleging the negligence supporting the negligent misrepresentation claim was making representations regarding safety and violating those representations by providing a hotel room with a tripping hazard).

interest in having the trial of a diversity case in a forum that is familiar with the law that must govern the action; (4) avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and (5) unfairness of burdening citizens of an unrelated forum with jury duty.

The administrative difficulties of handling this case in the District of Maryland are minimal, and do not favor proceeding in The Netherlands. The most substantial administrative difficulty, examined below, is applying the governing law to the case (likely Dutch law, at least for some of the substantive claims). As for the local interest factor, that tips in favor of proceeding in this Court, as does the inquiry regarding the jurors who will be required to hear the case. American citizens have an interest in ensuring that American corporations, like Marriott, operate safely, fulfill their contractual promises, and refrain from making material misrepresentations to their customers. Further, half of the claims in this lawsuit proceed only against Marriott, and all of the claims likely will involve evidence and witnesses located within the United States. A dispute largely between American citizen plaintiffs and an American hotel company certainly warrants American jurors.

As to the governing law, I assume without deciding that Dutch law applies to the tort claims.[7] But Federal Courts are "quite capable" of deciding foreign law issues, which are reviewable as a factual matter on appeal. *DiFederico*, 714 F.3d at 807. For this reason, the need

---

[7]        Marriott cites the *Klaxon* rule regarding applicability of substantive law in diversity suits: a district court must apply the conflict of law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941). Therefore, Maryland's conflict of law rules apply here, and Maryland uses the *lex loci delicti* rule to assess choice of law issues in tort actions. *Phillip Morris Inc. v. Angeletti* 752 A.2d 200, 230 (2000). That rule "dictates that when an accident occurs in another state, [the] substantive rights of the parties . . . are [] determined by the law of the state" where the tort occurred. *Id.* Marriott cites *Baker v. Booz Allen Hamilton*, 358 F. App'x 476, 480–81 (4th Cir. 2009) to support application of this rule to the international context. Def.'s Mot. Mem. 14.

to apply Dutch law does not favor dismissing the suit under *forum non conveniens*. Therefore, Marriott does not carry its burden as to the public interest factors.

<u>Failure to State a Claim</u>

Turning next to Marriott's other argument for dismissal, failure to state a claim, I find the Gallaghers have adequately pleaded each of their claims.

Marriott argues that the Gallaghers' claims, as to Marriott International specifically, must be dismissed under Rule 12(b)(6) because Marriott was not a party to the Management Agreement between the Hotel and Marriott Netherlands Group Companies NV, a corporation in The Netherlands. Def.'s Mot. Mem. 17; Ex. 1 to Def.'s Mot. Mem. ¶ 5 (ECF No. 28-3). Marriott disavows any "direct ownership interest in" the hotel, and disclaims control over the Hotel's day-to-day operations. Def.'s Mot. Mem. 17.[8]  As a result, Marriott claims it does not owe a duty to the Gallaghers, thus undermining the negligence claim, as well as the derivative loss of consortium claim. *Id.* 18-19.

As to the breach of contract, breach of warranty, and negligent misrepresentation claims, Marriott argues, first, that these claims are a guise to keep the case in the United States, and second, that Marriott neither provided nor operated the Hotel.

The Gallaghers allege Marriott had some degree of control over the Hotel because Marriott's website marketed the Hotel as Marriott's own, thus creating a duty owed to the Gallaghers. Second Amended Cmpl. ¶¶ 9-15.  And the Gallaghers seek discovery on the point of

---

[8]      Marriott presents as an exhibit to its reply an Affidavit from Gitta Brückmann, Area Vice President—Western Europe of Marriott International, Inc., that asserts Marriott International "does not control, manage or operate the Hotel, nor did it have a right to control, manage or operate the Hotel's day-to-day operations."  ¶ 9 (ECF No. 30-2).  The Court cannot consider this exhibit in deciding the 12(b)(6) motion because it was attached to Marriott's reply. *See Sadler v. Pella Corp.*, 146 F. Supp. 3d 734, 754 n. 9 (D.S.C. 2015).

Marriott's direct versus indirect control over the Hotel.  *See* Pl.'s Resp. 19.  While evaluating the existence *vel non* of disputed material facts is central to resolving a motion for summary judgment, it is not appropriate for resolving a motion to dismiss, where I must accept all well pleaded facts in Plaintiffs' favor, and draw all reasonable inferences in their favor.  *Kensington Volunteer Fire Dep't v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012).

The Gallaghers further allege "Marriott warranted and implied within the US that the quality and safety standards of any hotel rooms offered by the Defendants internationally, regardless of location, . . . would be comparable in quality and safety to the hotels Marriott operated within the United States."  A clear implication of this, according to the Gallaghers, is that "hotel rooms offered to business invitees would be reasonably safe and not contain tripping hazards."  Second Amended Cmpl. ¶ 30.  Mr. Gallagher alleges that he slipped, fell, and severely injured himself due to a hazard created by the Hotel, which reasonably supports an inference that Marriott breached actual and implied standards of safety for which Gallagher had contracted.  *Id.* ¶¶ 30-34.

As to negligent misrepresentation, the Gallaghers allege Marriott represented that their rooms overseas would be comparable in quality and safety (i.e., free of tripping hazards) to their hotels within the United States.  Second Amended Cmpl. ¶¶ 37, 39.  The Gallaghers further allege that Marriott engaged in material omissions that prejudiced them by failing to advise that while Marriott marketed the Renaissance Amsterdam Hotel-Kattengatl as its own, it was actually owned and operated by foreign subsidiaries over which Marriott would later disclaim legal responsibility.  *Id.* ¶ 39.

I find that the Plaintiffs have set forth claims sufficient to survive a Rule 12(b)(6) Motion (although I make no prediction about whether they will survive a motion for summary judgment

after discovery has been taken).  As to negligence and its derivative loss of consortium claim, the Second Amended Complaint sets forth more than threadbare elements of such claims, which is enough to survive a Rule 12(b)(6) motion.  *Iqbal*, 556 U.S. at 678–79.  While Marriott offers facts extrinsic to the complaint to support its claim that it is not a party to the Management Agreement, the Plaintiffs have alleged otherwise, and it is the pleadings that control.  Second Amended Cmpl. ¶¶ 9-15; 25-28.  And, even if not a party to the Management Agreement, Marriott may still be liable if it has indirect control over the operations of its Dutch affiliate.  Should discovery show otherwise, then this issue appropriately may be raised by Marriott on summary judgment.

I also find that Counts Two and Three survive the motion to dismiss.  First, on the breach of contract claim, the theory of implied contract is relevant.  *See* Second Amended Cmpl. ¶ 32.  An implied contract is one the parties do not set down in writing.  Instead, implied contracts are "agreements which legitimately can be inferred from intention of the parties as evidenced by the circumstances and the ordinary course of dealing and the common understanding of [people]."  *Md. Cas. Co. v. Blackstone Int'l Ltd.*, 114 A.4d 676, 706 (Md. App. 2015) (citing *Cnty. Comm'rs of Caroline Cnty. V. J. Roland Sashiell & Sons, In.*, 747 A.2d 600, 606 (2000)); *see also* Arthur Linton Corbin, CORBIN ON CONTRACTS, § 1.20 (rev'd ed. 1993) ("[C]onsiderations of equity and morality play a large part in the process of finding a promise by inference of fact as well as in constructing a quasi-contract without any such inference at all.  The exact terms of the promise that is 'implied' must frequently be determined by what equity and morality appear to require after the parties have come into conflict.").  Here, such a theory is applicable because there is no written contract language suggesting Marriott promised the Gallaghers that their room in Amsterdam would be up to American safety standards.  But under this theory, it is plausible that

a contract existed between the Gallaghers and Marriott, and that Marriott breached that contract when the room at the Renaissance Amsterdam led to Mr. Gallagher's serious injuries.  At this stage, the Plaintiffs are not required to plead evidence and the claim may proceed.

Similarly, the negligent misrepresentation claim survives.  The Gallaghers attach to their Second Amended Complaint screen shots of Marriott's website that they allege demonstrate hotel rooms at the Renaissance Amsterdam would be comparable in quality and safety to hotels in the United States.  As Marriott notes in its response, "nowhere do these excerpts promise to comply with American-based safety standards that are found in Marriott hotels in the United States." Def.'s Reply at 20.  On this basis alone, there is no misrepresentation that would substantiate the misrepresentation claim.  But the Gallaghers also bring an alternative theory of negligent misrepresentation: Marriott failed to advise them, and the general public, that while Marriott marketed the Amsterdam Hotel as its own, the hotel was instead operated by a foreign entity "over which Marriott could later disclaim any legal responsibility."  Second Amended Cmpl. 6, ¶ 39.  This is more (but not much more) than a threadbare recitation of the elements of a negligent misrepresentation claim; rather, the Gallaghers assert a theory of negligent misrepresentation sufficiently plausible to proceed.

### Conclusion

For the reasons stated above, it is hereby ORDERED that Marriott's motion to dismiss is DENIED.  A separate order shall issue.

DATED this 23rd day of October 2020.

BY THE COURT:

_____/S/_____

Paul W. Grimm
United States District Judge